## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WILLARD E. MORRISON,

                            :

        Petitioner,                     Case No. 1:09-cv-760

                            :        District Judge Sandra S. Beckwith
      -vs-                        Magistrate Judge Michael R. Merz

WARDEN, Ross Correctional Institution,

                            :

        Respondent.

---

### REPORT AND RECOMMENDATIONS

This is a habeas corpus case originally brought *pro se* by Petitioner Willard Morrison pursuant to 28 U.S.C. § 2254 seeking relief from his imprisonment in Respondent's custody upon his conviction on two counts of attempted murder.

### Procedural History

The Adams County, Ohio, grand jury indicted Morrison on two counts of attempted murder, with a firearm specification on Count 1, for his conduct during a traffic stop on September 5, 2005. After receiving two evaluations of his competency to stand trial, the trial court set the case for jury trial on October 1, 2007. On the morning of trial, however, Morrison withdrew his guilty plea and entered a plea of no contest to the charges pending against him. He was subsequently sentenced to a total sentence of twenty-five years: ten years on the first count of attempted murder, eight years on

the second count, and seven years on the firearm specification.

With new counsel, Morrison appealed to the Adams County Court of Appeals which affirmed the conviction.  *State v. Morrison*, 2008 Ohio 4913, 2008 Ohio App. LEXIS 4112 (Ohio App. 4th Dist. Sept. 15, 2008).  Morrison appealed further to the Ohio Supreme Court which declined review. He then filed the instant Petition with the following grounds for relief:

> **Ground One:** Double Jeopardy. Charged and found guilty of (2) two counts of attempted murder on the same person and at the same time.

> **Ground Two:** Duplicity. See Ground One.

> **Ground Three:** The court erred by sentencing based on a no contest plea that was not knowingly and voluntary [made] under the Fifth and Fourteenth Amendments to the U. S. Constitution & Crim. R. 11.

> **Ground Four:** Ineffective assistance of Council [sic]: Failed to provide competent legal assistance by not puruing [sic] whether there was an actual misunderstanding of what a plea to no contest meant.

(Petition, Doc. No. 1, PageID 5-9.)  Upon initial review, Magistrate Judge Hogan ordered and Respondent filed a Return of Writ (Doc. Nos. 2, 7.)  After the Return of Writ was filed, Petitioner's family sought representation from the Ohio Public Defender and  Assistant Ohio Public Defender Kimberly S. Rigby and attorney Laurence E. Komp entered their appearance on Petitioner's behalf (Doc. No. 8); they have filed a Reply (Doc. No. 16).  Petitioner sought and was denied discovery (Doc. Nos. 16, 18, 20, 23).  The case was reassigned to Magistrate Judge J. Gregory Wehrman and then promptly reassigned to the undersigned.[1]  As noted on the docket on April 18, 2011, the case is ripe for decision.

---

[1]Judge Wehrman is a recalled magistrate judge of the Eastern District of Kentucky who is cross-appointed in this District.  He graciously took formal assignment of Cincinnati cases during the time between the retirement of Judge Hogan and appointment of new magistrate judges in Cincinnati.

**Grounds One and Two**

In Ground One Mr. Morrison asserts that his right not to be placed twice in jeopardy for the same crime was violated when he was convicted of two counts of attempted murder of the same person at the same time.  In Ground Two he pleads – without argument – a variant on the first ground.  In the Reply, his counsel have combined argument on these two grounds for relief.

The facts underlying the convictions were summarized by the Court of Appeals:

> [*P2]  On September 5, 2005, Sergeant Rex Branham of the Adams County Sheriff's Department, while in uniform and on duty, stopped a vehicle driven by Morrison at the intersection of State Routes 125 and 348. Morrison exited his vehicle and fired gunshots in the direction of Sergeant Branham with an SKS assault rifle. The shots did not strike Sergeant Branham, but they struck his marked police cruiser. After firing the shots, Morrison returned to his vehicle and fled the scene.

> [*P3]  Sergeant Branham pursued Morrison in his police cruiser until Branham's cruiser became inoperable close to Compton Hill Road. Morrison then made a sudden u-turn at the intersection of Compton Hill Road, drove back toward Sergeant Branham's disabled police cruiser at a high rate of speed and rammed the police cruiser head-on. As a result, Sergeant Branham and Morrison both suffered severe injuries.

*State v. Morrison,* 2008 Ohio 4913, ¶¶2-3, 2008 Ohio App. LEXIS 4112 (Ohio App. 4th Dist. Sept. 15, 2008)

The issue raised in the First Ground for Relief was pled on direct appeal as Assignment of Error 2:

> Where the trial court does not merge for purposes of sentencing duplicative criminal counts, the consecutive sentences that result are void. Furthermore, the sentence must be vacated because it violates double jeopardy protections and due process of law. U.S. Const. Amends. V, XIV.

(Appellant's Brief, Ex. to Return of Writ, PageID 96.)   The Court of Appeals decided this assignment of error by finding that there was no violation of the Ohio allied offenses statute, Ohio Revised Code § 2941.25, which, it said "effectuates this prohibition against double jeopardy." *State v. Morrison*, *supra*, ¶ 17.

## Procedural Default

Respondent asserts Ground One is procedurally defaulted by Petitioner's failure to fairly present a Double Jeopardy claim to the Court of Appeals (Return of Writ, Doc. No, 7, PageID 36-37).   Although double jeopardy was mentioned in the second assignment of error, Respondent asserts the claim was argued solely in terms of Ohio merger law.

The Sixth Circuit Court of Appeals ordinarily requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default.   *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

Petitioner responds that there is no procedural default because the state court actually addressed the merits of the claim, instead of refusing to do so as would be required by procedural default doctrine as enunciated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)(Reply, Doc. No. 13, PageID 11-12). Petitioner relies on *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003); *Williams v. Coyle*, 260 F.3d 684 (6th Cir. 2001); *Workman v. Bell*, 178 F.3d 759 (6th Cir. 1998); and *Shank v. Mitchell*, 2008 U.S. Dist. LEXIS 83039 (S.D. Ohio 2008).

• In *Frazier*, a capital case, the Ohio Supreme Court recognized that Frazier had defaulted on his jury instruction claim by not requesting one, but decided the claim on the merits, essentially "forgiving" the procedural default. The Sixth Circuit did not analyze the procedural default question under *Maupin*, but merely held the claim was not barred because the Ohio Supreme Court had expressly decided that the claim was "without merit." *Frazier*, 343 F.3d at 791, *citing Ohio v. Frazier*, 652 N.E. 2d at 1013, 1014.

• *Williams v. Coyle, supra,* is also a capital case. In that case, which had a very tangled procedural history, the Sixth Circuit concluded while it was likely the petitioner had defaulted on his *Brady* claim, "the Ohio courts have not provided us with enough analysis to hold that Williams defaulted his claim," essentially denying the *Maupin* defense at the

second stage of the analysis. *Williams,* 260 F.3d at 696. As to his jury instruction claim, the court found it could not "read this decision [of the Ohio Supreme Court] as resting on a procedural bar."

• *Workman v. Bell*, 178 F.3d 759 (6th Cir. 1998), is another capital case, this time arising from Tennessee. There the Circuit upheld a district court decision that the Tennessee Court of Criminal Appeals had not relied on a procedural default, but had reached the merits of the relevant claim.

• Finally, *S. Adele Shank as next friend of Kevin Scudder v. Mitchell*, 2008 U.S. Dist. LEXIS 83039, is also a capital case from this district. That case also supports[2] the proposition that the federal courts will not enforce a procedural default that was not relied on by the state courts.

The Magistrate Judges believes this case is not correctly analyzed under *Maupin v. Smith*, but rather under the line of cases finding procedural default where there has not been a fair presentation of the federal claim to the state courts.

First of all, to qualify as a state decision immune from federal review, the decision must be independent of federal law.

> When . . . a state court decision fairly appears to rest on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983). When a state court decides state procedural

---

[2]At the place cited by Petitioner here. Judge Marbley's entire opinion is devoted to various points of procedural default analysis and comprises 158 pages.

questions and federal questions in the alternative, federal review is barred.  "If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision." *Florida v. Powell*, 559 U.S.___, 175 L. Ed. 2d 1009 (2009) *quoting Michigan v. Long* at 1041.  After *Harris v. Reed,* 489 U.S. 255 (1989), "federal courts ... will presume there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722 (1991) *quoting Michigan v. Long*, 463 U.S. 1032 at 1040-1041 (1983).  "A predicate to the application of the *Harris* presumption is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest on federal law or to be interwoven with federal law." *Coleman*, 501 U.S. at 735; *Simpson v. Jones*, 238 F. 3d 399, 407-408 (6th Cir. 2000); *Coe v. Bell,* 161 F. 3rd 320 (6th Cir. 1998).

The adequate and independent state ground doctrine rests on the obligation of comity between the state and federal courts.  The same value grounds the antecedent doctrine of fair presentation.  Before a state court can be held in subsequent federal litigation to have decided a federal claim on the merits, that claim must have been fairly presented to the state courts.  The cases cited by Petitioner all rely on a failure of the state courts to rest their decision plainly on state law grounds where they were clearly presented with a federal constitutional claim as well.  When the federal claim has not been clearly or fairly presented, an interpretation of the state court decision which insists that the court must have decided the claim does not respect our comity obligation.

To preserve a federal constitutional claim for presentation in habeas corpus, the  claim must

be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006);*Franklin v. Rose,* 811 F.2d 322 at 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Against this legal background, we examine the argument made by Petitioner on direct appeal. Assignment of Error Two is argued for seven pages in Appellant's Brief (Exhibit to Return of Writ, PageID 96-102). Only the doctrine of merger for sentencing under Ohio Revised Code § 2941.25 is discussed and only Ohio case law discussing that doctrine is cited. Neither federal case law nor the concepts underlying Double Jeopardy analysis are ever mentioned. Thus Petitioner's appellate counsel never made a double jeopardy argument. Instead, he made a "talismanic" reference to double jeopardy and due process in the heading of this section of his brief.

The Magistrate Judge concludes Morrison did not make a fair presentation of his Double Jeopardy claim to the state courts. None of the case law cited by Petitioner, *Frazier, Williams, Workman,* or *Shank*, excuses lack of a fair presentation. Because the Double Jeopardy claim was

-8-

not fairly presented to the state courts, it is procedurally defaulted.

## Merits

The Magistrate Judge offers the following merits analysis of the Double Jeopardy claim in the event the District Judge decides to reach the merits.

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784 (1969).

The test for whether two offenses constitute the same offense is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688 (1993); *Blockburger v. United States*, 284 U.S. 299 (1932).  In this case the identical statute is involved in both counts of the Indictment, the Ohio Revised Code prohibition of attempted murder.

What the grand jury intended to charge and what the evidence at trial established is that there were two  attempts to kill Sgt. Branham significantly separated in time.  As the Court of Appeals found, when subjected to a traffic stop, Morrison got out of his car and fired shots with an assault

rifle at Sgt. Branham without striking him.[3]  After not successfully killing Sgt. Branham, Morrison

got back into his car and attempted to flee.  When he discovered that Branham's cruiser had become

inoperable, Morrison ceased fleeing, turned his car around, and directed it head-on at Branham's

cruiser with the intention and likely effect of killing him.

Where two offenses are the same for *Blockburger* purposes, multiple punishments can be

imposed if the legislature clearly intended to do so. *Brown v. Ohio,* 432 U.S. 161 (1977); *Albernaz*

*v. United States*, 450 U.S. 333, 344 (1981);  *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v.*

*Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985).  The

legislative determination to impose multiple punishments under these circumstances must be

discerned from Ohio Revised Code § 2941.25.  That statute provides:

> (A) Where the same conduct by defendant can be construed to
> constitute two or more allied offenses of similar import, the
> indictment or information may contain counts for all such offenses,
> but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses
> of dissimilar import, or where his conduct results in two or more
> offenses of the same or similar kind committed separately or with a
> separate animus as to each, the indictment or information may
> contain counts for all such offenses, and the defendant may be
> convicted of all of them.

As Petitioner acknowledges, the Court of Appeals applied Ohio Revised Code § 2941.25 in deciding

his case.  First, it determined that the elements of the two charges were exactly the same.  *State v.*

*Morrison, supra,* ¶ 22.  Then it proceeded to the second step:

-----

[3]The shots struck the police cruiser.  To convict, the prosecutor had to persuade the jury
beyond a reasonable doubt that the shots were aimed at Sergeant Branham.  That there was
sufficient evidence to support that conclusion is not contested in this proceeding, nor was it
contested on direct appeal.

[*P23] Under the second step, the court must review the defendant's conduct "to determine whether the defendant can be convicted of both offenses." *Jones* at 14, *citing Blankenship*. Only where the multiple offenses "were committed separately or that there was a separate animus for each crime" can the defendant "be convicted of both offenses." *Id., citing Blankenship*. The Supreme Court of Ohio has "generally not found the presence or absence of any specific factors to be dispositive on the issue of whether crimes were committed separately or with a separate animus." *Id.* Instead, courts must "analyze the particular facts of each case *** to determine whether the acts or animus were separate." *Id.* (Citations omitted.)

[*P24] In *State v. Walker* (June 30, 2000), Montgomery App. No. 17678, 2000 Ohio App. LEXIS 2952 the state charged defendant with two counts of improperly discharging a firearm at or into a habitation. *Id.* Defendant contended that the court should have merged the counts into one offense. *Id.* The defendant, after attempting and failing to force his way into a residence, walked into the front yard and fired four shots through a window. *Id.* This conduct led to the first of the two counts. *Id.* Next, defendant returned to the car he was driving, reloading on the way. *Id.* Defendant then "swung the gun up over the roof of that car and fired one shot into the residence *** then got back inside the vehicle and fired one final shot at that residence through the open passenger window." *Id.* This conduct led to the second of the two counts. *Id.* The Walker court concluded "that these offenses were committed separately and hence the trial court did not commit error in failing to merge them." *Id.*

[*P25] Here, Sergeant Branham initially stopped Morrison for a traffic violation. Morrison exited his vehicle and fired shots in the direction of Sergeant Branham with an assault rifle. This conduct resulted in the first count of attempted murder against Morrison, along with the gun specification.

[*P26] Morrison then returned to his vehicle and drove away, leading Sergeant Branham on a chase. While pursuing Morrison, Branham's cruiser broke down and became inoperable. Morrison turned his vehicle around in the roadway, sped back toward Branham's disabled vehicle, crossed the centerline of the roadway, and struck Branham's cruiser head-on at a high rate of speed. This conduct involving the collision resulted in the second count of attempted murder against Morrison.

[*P27] The conduct of Morrison is similar to the conduct of the

defendant in Walker. Morrison's separate acts did not occur in rapid succession. In addition, Morrison used a gun to commit the first attempted murder and used his vehicle to commit the second attempted murder. As such, we find that these offenses were committed separately. Consequently, we find that the court did not err when it failed to merge the two counts of attempted murder into one conviction.

[*P28]  Accordingly, we overrule Morrison's second assignment of error.

*Id.*  ¶¶ 23-28.  To summarize, the Court of Appeals found the two offenses were committed

separately and therefore intended to be published separately under Ohio Revised Code § 2941.25(B).

Petitioner argues this was both an unreasonable determination in light of the facts and an

unreasonable application of *Brown v. Ohio,* 432 U.S. 161 (1977) (Reply, Doc. No. 13, PageID 412.)

As to the factual part of the argument, Petitioner says there was plainly only one animus, "an attempt

to murder Sergeant Branham." *Id.*  at 413.  But the Court of Appeals did not find separate animus,

it found separate offenses, which is an alternative under Ohio Revised Code § 2941.25(B).  And that

was clearly a reasonable finding.  Morrison shot at Branham, stopped shooting, got in his car and

started fleeing, then, having seen Branham was disabled, turned is car around and tried to kill

Branham with his car.  The first attempt at murder was complete; the actions taken to carry out the

attempt had ceased and Morrison was fleeing.  Then, when he saw another opportunity to kill, he

abandoned his flight and attempted to turn his car into a murder weapon.  There was not one

continuous attempt to kill, but two attempts separated by an attempt to flee.  Even if this Court

would have reached a different conclusion on these facts, it cannot be said the Court of Appeals

finding of separateness was unreasonable.

Petitioner also claims this was an unreasonable application of *Brown, supra.* However,

*Brown* is not an interpretation of Ohio Revised Code § 2941.25 as it involved an offense which

-12-

occurred in November, 1973, before the statute was adopted. *Brown* also did not involve the question of when two offenses are "separate," but rather the double jeopardy violation which arises from prosecuting for both an offenses and a lesser included offense. Indeed, the *Brown* court reminds us that "the Ohio courts 'have the final authority to interpret ... that State's legislation." 432 U.S. at 167, *quoting Garner v. Louisiana*, 368 U.S. 157 (1961).

Having asserted that the Ohio Court of Appeals unreasonably applied *Brown*, which is not in point, Petitioner casts his argument of misapplication entirely in terms of state law. (*See* Reply, Doc. No. 13, PageID 413-415.) But when 28 U.S.C. § 2254(d) speaks of clearly established law, it is Supreme Court law which is referenced. That is what the text says and the Court has repeatedly held that it means what it says. *Williams v. Taylor,* 529 U.S. 362 (2000); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Brown v. Payton,* 544 U.S. 133, 134 (2005).

*Brown* holds that multiple punishments can be imposed on different parts of a course of conduct if that is the intention of the legislature. The Ohio Court of Appeals tells us in this case that "separate" in Ohio Revised Code § 2941.25(B) includes conduct as close in time as Morrison's conduct here. There was therefore no violation of the Double Jeopardy Clause in imposing separate punishment for the two attempts to kill Sgt. Branham. Grounds One and Two should be dismissed with prejudice.

## Ground Three

In his third Ground for Relief, Petitioner asserts his no contest plea was not knowing and voluntary. Morrison raised this claim as his first Assignment of Error on direct appeal and the Court

of Appeals decided it as follows:

[*P8]  In his first assignment of error, Morrison contends that his pleas of no contest were not made knowingly, intelligently and voluntarily. He asserts that his severe head injuries suffered as the result of his collision with the police car left him in a state where he could not comprehend the nature of a no contest plea or ht [sic] sentencing risks involved therein. He maintains that his responses to the court's questions during his change of plea hearing show a lack of comprehension on his part.

[*P9]  In determining whether to accept a plea, trial courts must determine if the defendant is knowingly, intelligently, and voluntarily entering the plea. *State v. Johnson* (1988), 40 Ohio St.3d 130, 532 N.E.2d 1295, syllabus; Crim.R. 11(C). As such, the trial court should engage in a dialogue with the defendant as described in Crim.R. 11(C). *State v. Puckett*, Scioto App. No. 03CA2920, 2005 Ohio 1640, P9. While strict compliance with Crim.R. 11(C) is preferred, reviewing courts will find a plea knowing, intelligent, and voluntary if the judge accepting the plea substantially complies with Civ.R. 11(C). Id. At P10, *citing State v. Boshko* (2000), 139 Ohio App.3d 827, 745 N.E.2d 1111. The term "substantial compliance" means that "under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id., citing State v. Stewart* (1977), 51 Ohio St.2d 86, 364 N.E.2d 1163; *State v. Carter* (1979), 60 Ohio St.2d 34, 396 N.E.2d 757, certiorari denied (1980), 445 U.S. 953, 100 S. Ct. 1605, 63 L. Ed. 2d 789.

[*P10]  A defendant, contending that his plea was not knowingly, intelligently, and voluntarily made, must show a prejudicial effect. *Id.* at P11, *citing Stewart, supra* at 93; Crim.R. 52(A). "The test is whether the plea would have otherwise been made." *Id., citing State v. Nero* (1999), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, *citing Stewart, supra; Corbin* at 386, 2001 Ohio 4140, 751 N.E.2d 505.

[*P11] The competency standard for entering a plea "is the same as the competency standard for standing trial." See *Godinez v. Moran* (1993), 509 U.S. 389, 391, 113 S. Ct. 2680, 125 L. Ed. 2d 321; *State v. Mink*, 101 Ohio St.3d 350, 2004 Ohio 1064, P57, 805 N.E.2d 1064; *State v. Bolin* (1998), 128 Ohio App.3d 58, 713 N.E.2d 1092; *State v. Jenkins*, Henry App. No. 06, 2005 Ohio 5616, P8. To determine whether a defendant is competent to stand trial, a court must determine that defendant "has 'sufficient present ability to consult

-14-

with his lawyers with a reasonable degree of rational understanding' and a 'rational as well as a factual understanding of the proceeding against him.'" *Jenkins*, at P8, *citing Moran* at 397, in turn *quoting Dusky v. United States* (1960), 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824.

[*P12] However, "[a] finding that a defendant is competent to stand trial * * * is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself whether the waiver of his constitutional rights is knowing and voluntary." *Godinez* at 400-401. (Citations omitted.) While, in a sense, "there is a 'heightened' standard for pleading guilty and for waiving the right to counsel," such standard "is not a heightened standard of competence." *Id.* at 401.

[*P13] Morrison points to two separate instances during his change of plea hearing, which he claims show his inability to understand the consequences of his plea. First, Morrison points to the following colloquy:

COURT: Mr. Morrison, in regard to count one with the specification, the specification being that Willard E. Morrison discharged a firearm at a peace officer or a corrections officer while committing the offense, do you understand that if you enter a no contest plea in regard to the specification, and the Court makes a finding of guilty based upon the facts in the indictment and/or those proffered by the State of Ohio, that the firearm specification included in count one requires an actual seven year term of incarceration in an appropriate state penal institution, and that said period of incarceration is mandatory and must be served prior to any sentence that you would receive for a conviction to the charge or the sentence involved in counts one and/or two. Do you understand that?

MR. MORRISON: Yes your Honor I understand.

COURT: Do you have any questions in regard to the mandatory term of incarceration of seven years or the mandatory fact it must be served consecutive to any terms of incarceration imposed in regard to counts one and/or two.

MR. MORRISON: No your Honor.

COURT: Now Mr. Morrison I noticed that counsel gave you the answer that no you didn't have any questions. Do you understand this is a personal thing…

MR. MORRISON: Yes.

COURT: . . .that, that really only you can be the one that says, hey judge I understand what you're saying or judge I don't understand what you're saying.

MR. MORRISON: Well, might I speak?

COURT: Yes sir.

MR. MORRISON: I don't understand the terms of the legality, but I understand the terms you are giving as the presiding judge that it can go this far, that I understand.

COURT: Okay. In regard to count one, if you were to receive, and let me try and break this down further, in regard to count one of the indictment, if you were to receive the maximum penalties for a no contest plea and finding of guilt in regard to count one with the gun specification, do you understand that the court could sentence you to seven years incarceration in regard to the gun specification? Do you understand that?

MR. MORRISON: Yes your Honor I understand.

COURT: The court could also sentence you to ten years incarceration on the underlying charge of attempted murder in count one. Do you understand that?

MR. MORRISON: Yes sir your Honor I do.

COURT: Do you understand if the Court does so, that those terms must be served consecutive, meaning that you would be required to serve the first seven years on the gun specification, and then you would commence or start serving the ten year period on the sentence on the underlying charge of attempted murder. Do you understand that?

MR. MORRISON: Yes your Honor.

Next, Morrison points to the following colloquy:

-16-

COURT: Mr. Morrison, has your attorney discussed with you the term merger of count one and count two?

MR. MORRISON: Yes your Honor.

COURT: By law, and upon the request of your attorney, there is a, the possibility that the sentences in count one and count two, the attempted murders, should be merged for purposes of sentencing, meaning that they would be combined as one sentence versus that of two separate sentences. That has been discussed with you?

MR. MORRISON: Yes your Honor.

COURT: Do you have any questions about merger of sentences in regard to the underlying charges of attempted murder in count one and attempted murder in count two?

MR. MORRISON: I really don't know what the deal is, but that's the only thing I can say. I don't know what you're actually telling me.

COURT: Okay. If there was a request for merger of the sentences in count one, the attempted murder and in count two of attempted murder, because the acts are alleged to be relatively close in tie, they could be considered for purposes of sentencing as one act of attempted murder for purposes of sentencing, meaning that the maximum sentences would be merged from that of ten years on count one and ten years on count two to only one ten year term of incarceration as relates to count one and two. Do you understand that?

MR. MORRISON: That I understood.

COURT: Okay. You're welcome. Any additional questions in regard to the issue of merger?

MR. MORRISON: No your Honor.


[*P14] We agree, based on the above colloquies, that Morrison did not initially understand for certain (1) the nature of the mandatory sentence with regard to the gun specification, and (2) the concept of merger. However, after further explanation by the court, Morrison clearly and unequivocally responded that he understood the information explained to him by the court. As such, we find that,

under the totality of the circumstances, Morrison subjectively understood the implications of his no contest pleas and the rights he was waiving. Consequently, we find that Morrison knowingly, intelligently, and voluntarily entered his pleas.

[*P15]  Accordingly, we overrule Morrison's first assignment of error.

*State v. Morrison, supra*, ¶¶ 8-15.

Where, as here, a state court clearly decides a federal constitutional claim on the merits, a later federal habeas court must defer to the state court ruling unless it was contrary to or an unreasonable application of clearly established Supreme Court precedent.  A state court finding of fact is binding in later habeas litigation unless demonstrated to be incorrect by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Whether a defendant understood what was being said to him in a plea colloquy is a factual question.  The factual findings of a state court that a plea was proper are generally presumed to be correct.  *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989), *overruled on other grounds by Parke v. Raley,* 506 U.S. 20 (1992).  Whether a guilty or no contest plea is or is not voluntary is a mixed question of fact and law, but state court historical factual findings underlying the determination are entitled to a presumption of correctness under 28 U.S.C. §2254(d).  *Parke v. Raley*, 506 U.S. 20 (1992). A plea of guilty or no contest is valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances.  *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984).  The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case.  *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938);

*Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

A state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing. *Stumpff v. Mitchell*, 372 F.3d 821 (6th Cir. 2004), *citing Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *Dunn v. Simmons*, 877 F.2d 1275, 1277 (6th Cir. 1989), *overruled on other grounds by Parke v. Raley*, 506 U.S. 20 (1992).

Petitioner here does not rely on material outside the record to show the plea was not knowing, intelligent, and voluntary. Nor does he claim the Ohio courts failed to apply the correct law. Instead he asserts "the record demonstrates that in looking at the totality of the circumstances, Morrison did not understand the 'relevant circumstances and likely consequences' of his plea." (Reply, Doc. No. 13) *quoting Brady, supra.* The trial judge, who was in actual conversation with Morrison during the plea colloquy, was in a much better position to appreciate whether he understood the plea than this Court is on the written record. The Court of Appeals, which dealt with the same written record we have here, found the plea proper. Petitioner's counsel find fault with the fact that the judge asked leading questions, but that is a common practice in every plea colloquy this judge has engaged in or seen in habeas proceedings. While it might be more satisfying at some level if a judge, for example, asked a defendant to explain in his own words the confrontation right he is giving up, the Constitution does not require that a person have taken a course in criminal law before he can plead no contest. At each place in the colloquy where Morrison expressed confusion, the trial judge stopped to give an explanation and then asked if he then understood and received an affirmative answer.

The determination of the Ohio courts that the plea was knowing, intelligent, and voluntary

is entitled to deference from this Court. Therefore the Third Ground for Relief should be dismissed with prejudice.

## Ground Four

In his fourth Ground for Relief, Morrison asserts he received ineffective assistance of trial counsel. This claim was also considered on the merits by the Ohio Court of Appeals which held:

> [*P29] In his third assignment of error, Morrison contends that he received ineffective assistance of counsel. He asserts that his trial attorney failed to determine whether he was capable of understanding his plea before he entered it. Further, Morrison claims that his counsel failed to brief the issue of merger of his two attempted murder offenses.
>
> [*P30] "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." *State v. Wright,* Washington App. No. 00CA39, 2001 Ohio 2473, *citing State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476, cert. den. (1988), 488 U.S. 975, 109 S. Ct. 515, 102 L. Ed. 2d 550; *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient * * *"which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense* * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Absent both showings, "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*
>
> [*P31] This court "when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action." *Id., citing State v. Phillips* (1995), 74 Ohio St.3d 72, 1995 Ohio 171, 656 N.E.2d 643. Instead,

this court "must be highly deferential." *Id., citing Strickland* at 689. Further, "a reviewing court: 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id., citing Strickland* at 689.

 [*P32]  Here, Morrison bases his ineffective assistance of counsel claim on the arguments he made in his first and second assignments of error. However, we did not find error in either assignment of error. Therefore, under the first prong of the *Strickland* test, we find that Morrison's trial counsel's performance was not deficient. Consequently, Morrison did not have the ineffective assistance of counsel.

 [*P33]  Accordingly, we overrule Morrison's third assignment of error.

*State v. Morrison, supra*, ¶¶ 29-33.

Morrison argues in this Court that his trial attorney was ineffective because Morrison did not understand what a plea of no contest was.  Yet whether or not Morrison had an off-the-record discussion with counsel about the meaning of that plea, he evinced a sufficient understanding of the plea during the plea colloquy as quoted above.

Trial counsel certainly was aware, as Morrison now asserts, that Morrison claimed to have no memory of the events in suit and one doctor had determined he had permanent amnesia for those events.  Under those circumstances, the trial would have featured a veteran state trooper who was the victim of an attempted homicide for the prosecution and a defendant who, if he testified at all, would have said he did not remember what happened.  What other evidence might have been available is not known to this Court[4] because the claim of ineffective assistance of trial counsel was

---

[4]Except that there were bullet holes in the crusier.

never presented in a petition for post-conviction relief and there is no evidence outside the trial court record. But the record does not suggest that a trial would have had any chance of producing anything but a conviction on the two counts of attempted murder.

Current counsel suggests Morrison believed that the two counts would be merged, but that substantially overreads the record. The trial judge discussed the possibility of merger with Morrison during the plea colloquy, but also elicited his understanding that he could receive the maximum sentence.

Current counsel fault trial counsel for not "pursu[ing] his client's competency to understand and accept a no contest plea." (Reply, Doc. No. 13, PageID 425.) As the Court of Appeals found, the competency standard for entering a plea is the same as the standard for standing trial. *State v. Morrison, supra*, ¶ 11. Counsel did pursue Morrison's competency to stand trial and he was found competent after a hearing.

Current counsel claim that trial counsel is not entitled to the presumption of competence which attaches to being a properly licensed attorney because Mr. Wrage was "being disciplined by the Ohio Supreme Court as of November 19, 2009." (Reply, Doc. No. 13, PageID 426-427.) No evidence regarding that disciplinary matter is before this Court and Morrison does not dispute that Mr. Wrage was properly licensed throughout the time this case was being litigated.

Finally, this Court denied Petitioner's request for discovery regarding this Ground for Relief, so it has no evidence from Petitioner of off-the-record conversations between him and Mr. Wrage nor any other proof of what alternative strategies might have been pursued or evidence offered.

On the record before this Court, the Court of Appeals application of *Strickland v. Washington, supra*, was not objectively unreasonable. The fourth Ground for Relief should be

dismissed with prejudice.

## Conclusion

In accordance with the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.

May 26, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).