IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Willard E. Morrison,            )
                                )
    Petitioner,                 )    Case No. 1:09-cv-760
                                )
vs.                             )
                                )
Warden, Ross Correctional       )
Institution,                    )
                                )
    Respondent.                 )

**ORDER**

Before the Court is the Magistrate Judge's Report and Recommendation of May 26, 2011 (Doc. 24), and Petitioner's Objections to that Report. (Doc. 27)  Petitioner objects on several grounds to the Magistrate Judge's recommendation that his petition for a writ of habeas corpus be denied.  For the reasons discussed below, the Court adopts the Report and Recommendation.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts giving rise to Petitioner's convictions were summarized by the Ohio Court of Appeals.  State v. Morrison, 2008 Ohio 4913, ¶¶2-3, 2008 Ohio App. LEXIS 4112 (Ohio App. 4th Dist., Sept. 15, 2008).  On September 5, 2005, Sergeant Rex Branham of the Adams County Sheriff's Department stopped a vehicle driven by Petitioner.  Morrison got out of the car armed with an assault rifle, and fired shots at Sergeant Branham.  Morrison missed hitting Branham but bullets struck his marked police car.

Morrison got back in the car and fled the scene, with Branham in pursuit.  Branham's cruiser broke down and became inoperable a short time later, close to Compton Hill Road. Morrison then made a sudden u-turn, drove head-on toward Sergeant Branham's disabled car at a high rate of speed, and rammed the cruiser.  Both Sergeant Branham and Morrison suffered severe injuries.

The Adams County, Ohio grand jury indicted Morrison on two counts of attempted murder, with a gun specification on Count One.  Morrison was evaluated prior to trial, as he sustained a closed head injury in the collision.  He was found competent to stand trial.  On the morning his jury trial was scheduled to start, Morrison withdrew his not guilty plea and entered pleas of no contest to the pending charges.  The trial court thereafter sentenced him to consecutive terms of ten years on the first count of attempted murder with seven years on the gun specification, and eight years on the second count, for a total of twenty-five years of imprisonment.

Morrison appealed to the Adams County Court of Appeals which affirmed his conviction and sentence.  Morrison's petition for review by the Ohio Supreme Court was denied due to a lack of a substantial constitutional issue.  Morrison then filed his petition pro se in this Court, raising the following grounds for relief:

**Ground One:** Double Jeopardy.  Charged and found guilty of

>two counts of attempted murder on the same person at the same time.
>
>**Ground Two:** Duplicity.  See Ground One.
>
>**Ground Three:** The court erred by sentencing based on a no contest plea that was not knowingly and voluntary [sic] under the Fifth and Fourteenth Amendments to the U.S. Constitution and Crim. R. 11.
>
>**Ground Four**: Ineffective assistance of Council [sic]. Failed to provide competent legal assistance by not puruing [sic] whether there was an actual misunderstanding of what a plea to no contest meant.

(Petition, Doc. 1.)  Morrison later obtained counsel to represent him in this case.  (Doc. 8)

## DISCUSSION

A federal court may issue a writ of habeas corpus to correct a state trial that resulted in petitioner's state confinement if that proceeding was rendered fundamentally unfair by a violation of the Constitution or laws of the United States.  <u>Clemmons v. Sowders</u>, 34 F.3d 352, 354 (6th Cir. 1994); 28 U.S.C. §2254(a).

Morrison's first ground for relief argues that the two attempted murder charges on which he was convicted and sentenced violated the constitutional prohibition on double jeopardy.  Ground Two is a variant of the first ground, contending the charges were duplicates.  The Magistrate Judge concluded that both of these claims are procedurally defaulted because Morrison failed to make a fair presentation of his federal Double Jeopardy claim to the Ohio courts.

3

It is beyond dispute that a habeas petitioner must "first exhaust state court remedies." Gross v. Warden, Lebanon Corr. Inst., 08-4727, 2011 WL 1597659 (6th Cir. Apr. 27, 2011)(citing 28 U.S.C. § 2254(b)(1)). A petitioner satisfies the exhaustion doctrine when he fairly presents his claim to the state courts so that the state courts have the first opportunity to decide the claim. Id., citing Lyons v. Stovall, 188 F.3d 327, 331 (6th Cir. 1999). The claim is "fairly presented" if the petitioner asserts both the legal and factual basis for the claim. Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006)(citing McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000)). Thus, "petitioner must present his claim to the state courts as a federal constitutional issue - not merely as an issue arising under state law." Williams, 460 F.3d at 806 (citing Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984)).

Morrison argues that he did not default these claims because he cited the federal constitution in his state court appeal briefs, which he contends satisfies the fair presentment requirement. As the Magistrate Judge noted, Morrison's second assignment of error consumed seven pages in his appellate merits brief, and discussed only the state law doctrine of merger of offenses for sentencing purposes. Ohio cases discussing the application of that doctrine are cited in the brief. There is no federal case law presented, and the federal constitutional

concepts underlying the protection against double jeopardy are not discussed.  The only reference to the federal constitution or federal rights is contained in the heading for the section, which states: "Where the trial court does not merge for purposes of sentencing duplicative criminal counts, the consecutive sentences that result are void.  Furthermore, the sentence must be vacated because it violates double jeopardy protections and due process of law.  U.S. Const. Amends. V, XIV."  (See Doc. 7, Exhibit 7 to Return of Writ, PAGEID 96-102)  As the Magistrate Judge correctly points out, Morrison failed to present any legal argument to support his claim of a federal double jeopardy violation.

In his objections, Morrison argues that his citation to the federal constitution is sufficient; that the state court's decision citing federal principles belies any argument that he did not fairly present his claim; and that the "unique" federal double jeopardy standards explain Morrison's total reliance on Ohio law when presenting his claim to the state court.  (Doc. 27 at 2)  The first argument fails because a defendant cannot just employ terms such as "due process" or "fair trial," or simply cite a constitutional provision, without presenting facts and legal argument to explain the citation.  See, e.g., <u>Riggins v. McGinnis</u>, 50 F.3d 492, 494 (7th Cir. 1995).  Morrison's second argument also fails, because the Ohio Court of Appeals' discussion of this issue simply mentioned the Fifth Amendment as

prohibiting double jeopardy. The opinion substantively addresses Morrison's arguments concerning Ohio Rev. Code 2941.25 and the trial court's application of the state law merger doctrine.

With regard to the "unique" federal standards governing double jeopardy, Morrison contends that the application of state law or statute must be viewed through the lens of federal constitutional protections. But Morrison did not expressly argue that the trial court's application of Ohio Rev. Code 2941.25 violated his federal double jeopardy rights; he argued that he lacked a separate animus for the two counts of attempted murder, as required by R.C. 2941.25(B). The Court of Appeals rejected that argument because it found that Morrison committed two separate offenses, noting that his two attempts were not made in rapid succession, and that he first used a gun and then later used his vehicle to try to kill Sergeant Branham. The Court agrees with the Magistrate Judge's conclusion that the first two grounds for relief presented in Morrison's petition are procedurally defaulted.

Out of an abundance of caution, the Magistrate Judge also analyzed the merits of Morrison's double jeopardy claims and found them lacking. A petitioner "who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Edwards v. Carpenter, 529 U.S.

446, 451 (2000) (citations omitted). In such cases, a petitioner must demonstrate both cause and prejudice, which Morrison has not done. But even if he had, this Court agrees with the Magistrate Judge's conclusion that Morrison was not punished twice for the same offense in violation of the Double Jeopardy clause and Brown v. Ohio, 432 U.S. 161, 165 (1977). Morrison has never argued that there was insufficient evidence to support a conclusion that he was intentionally shooting at Branham, even though the shots he fired fortunately missed Branham and hit his police vehicle instead. Morrison then got back into his car and fled the scene; only when Branham's car became disabled did he cease his flight, turn around and drive his car directly into Branham's. While Morrison's acts were directed at the same person, they were separate and distinct from each other.

    Morrison relies on Brown v. Ohio, which held that the Double Jeopardy clause did not permit a later prosecution for auto theft after the defendant had been charged and pled guilty to the lesser included offense of joyriding (operating the vehicle without the owner's consent). The defendant was caught and charged with joyriding nine days after he stole the car, and only later was returned to the county from which he stole the car and then charged with auto theft. The lapse of time did not alter the fact that the acts in question (auto theft and joyriding) were the same offense, because joyriding is a lesser included

offense of auto theft. Morrison argues that his conduct took place over a span of minutes, not nine days as in <u>Brown</u>, but the temporal span does not control the analysis of whether Morrison's two separate attempts to kill Branham were separate offenses. Moreover, in discussing the protections afforded by the Double Jeopardy clause, <u>Brown</u> noted that "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." <u>Id</u>. at 165 (citation omitted). That is the situation presented here, and there is nothing in the record supporting a conclusion that the state courts exceeded the legislative authority embodied in R.C. 2941.25. Thus, even if the merits of Morrison's double jeopardy claims were not defaulted, the Court concludes that they lack merit.

    Morrison's third ground for relief argues that his no-contest pleas were not knowing and voluntary. Morrison claims that his pleas were not voluntary because he did not fully understand the nature of the charges or the effect of a no-contest plea. Morrison raised this claim as his first assignment of error on his direct appeal. The Court of Appeals rejected his claim, which was premised on two instances during the plea colloquy when Morrison told the trial judge he did not understand

what the judge was telling him.  The first instance concerned the consecutive sentence for the gun specification, and the second concerned the possible merger of the attempted murder counts.  In both cases, the trial judge stopped and again explained the issue and the ramifications to Morrison.  And in both cases, the court of appeals concluded that Morrison clearly and unequivocally responded that he understood the information explained to him by the court.  "As such, we find that, under the totality of the circumstances, Morrison subjectively understood the implications of his no contest pleas and the rights he was waiving.  Consequently, we find that Morrison knowingly, intelligently, and voluntarily entered his pleas."  (Doc. 7, Exhibit 10, Court of Appeals decision at 9, ¶14.)

The Magistrate Judge concluded that the state court's determination was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent.  In his objections, Morrison argues that several colloquies from the trial court indicate that he did not understand what was being said to him.  But the transcript of the plea proceedings demonstrates that each time Morrison said that he was confused or did not understand something, the trial judge stopped and gave another explanation, and then specifically asked Morrison if he understood or had any more questions.  (See Doc. 7, Exhibit 22, Change of Plea Transcript at 24-59, PAGEID 310, 311, 317, 320,

323, 334, 337, and 345.)  Morrison would then respond with an affirmative answer.  The trial court also specifically told Morrison that "every question is a good question if it helps you understand something better, so I don't want you to hesitate to ask any questions that you may have...".  Id. at 26, PAGEID 312.  Whether Morrison understood the implications of his no contest plea is a factual question, and the state court's finding is binding on this Court unless clear and convincing evidence shows it to be incorrect.  28 U.S.C. §2254(e)(1).  Morrison also complains that the trial judge asked him leading questions, prompting yes or no answers which did not fully confirm Morrison's understanding.  As the Magistrate Judge aptly noted, the use of leading questions is a very common practice in this and other courts, and the record demonstrates that whenever Morrison expressed some uncertainty or confusion, the trial court stopped and gave another explanation.  Based upon Morrison's unambiguous responses and the deference afforded to the state court's factual findings, the Court concludes that the state court's determination that Morrison's plea was voluntary, knowing, and intelligent is not contrary to or an unreasonable application of established federal law.  Morrison's third ground for relief is therefore dismissed.

     Morrison's fourth and final ground for relief contends that he received ineffective assistance of counsel at his trial, which

10

rendered his guilty plea involuntary.  He presented this claim as his third assignment of error in his direct appeal, and the state court rejected it based on its conclusions regarding Morrison's other claims.  Morrison did not pursue post-conviction relief in the state court, and there is no evidence de hors the record concerning this claim.

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Morrison must show that his attorney's performance was deficient, and that the deficiency prejudiced his defense such that the proceedings were unfair and the result unreliable.  Id. at 687.  Scrutiny of counsel's performance is highly deferential.  Id. at 689-90.  To satisfy the prejudice prong of the Strickland test, "[the] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. ...  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 649.

Morrison argues that his trial lawyer failed to investigate his understanding of the ramifications of a no contest plea.  But whatever his lawyer may or may not have done or failed to do, the plea colloquy demonstrates that Morrison sufficiently understood the charges to which he pled no contest.  Morrison notes that his attorney told the trial court that the no contest plea was

prompted in large part by Morrison's amnesia regarding the events underlying the charges, and that at least one doctor believed the amnesia would be permanent.  Yet, he claims that his attorney did not argue or suggest that his amnesia would also undermine his ability to knowingly plead to the charges.

The state court found that there is no material difference between the competency standards for going to trial, and those for entering a knowing plea.  Despite Morrison's amnesia regarding events, he was found capable of understanding the charges against him.  Morrison's counsel properly obtained that competency evaluation prior to his plea; that combined with Morrison's colloquy responses, demonstrate that any ineffective assistance did not result in any actual prejudice to Morrison.

Morrison also objects to the Magistrate Judge's application of the AEDPA standards because the state court improperly merged its consideration of Morrison's knowing and voluntary plea with the Strickland test.  (See Doc. 27 at 11)  He cites Moore v. Bryant, 348 F.3d 238 (7th Cir. 2003), affirming a grant of habeas relief based on ineffective assistance of counsel after defendant pled guilty.  But in that case, the record before the state court demonstrated that shortly before trial, the defendant pled guilty based on his attorney's mistaken advice concerning a pending change in state law governing good time credits.  Shortly after pleading guilty, the defendant discovered that the advice was

12

wrong and moved to withdraw his plea.  He submitted his own affidavit, and his attorney testified at the hearing on the motion to withdraw, but the trial court denied his motion and he was sentenced based on his plea.  The Seventh Circuit found the attorney's conduct was objectively unreasonable, and that Moore's affidavit and his testimony at the plea motion hearing, along with the entire record in the trial court, supported his assertion that he would not have pled guilty absent the mistaken advice.  The court then found that the state court's rejection of the ineffective assistance claim was unreasonable, as it was based upon the thoroughness of the plea colloquy.  But at that time, the defendant had no idea that his attorney's advice was wrong; and the court's colloquy questions did not include any issues about the length of sentence or good time credits.  Thus the court held that the plea colloquy was not a panacea for the attorney's objectively deficient performance.  Id. at 243.

    These circumstances are simply not relevant to Morrison's situation.  The Magistrate Judge noted that there is no evidence outside the record that might support a claim that his counsel provided incorrect legal advice about a no contest plea.  And Morrison does not articulate how the result would have been different absent the purported ineffective assistance.  The Court agrees that the state court's rejection of Morrison's claim was

13

not contrary to nor an unreasonable application of the Strickland standards.

## CONCLUSION

As required by 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. Upon such review, the Court finds that Morrison's objections to the Magistrate Judge's Report and Recommendation are not well taken, and his objections are overruled.

It is therefore ordered that the petition for a writ of habeas corpus is **DENIED** with prejudice. A certificate of appealability shall not issue because jurists of reason would not find it debatable whether this Court is correct in concluding that the petition for habeas relief should be denied. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

This Court **CERTIFIES**, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this Order would not be taken in good faith. Accordingly, Petitioner will not be granted leave to appeal in forma pauperis. See Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997). Petitioner may seek a certificate of appealability from the Court of Appeals. See 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

SO ORDERED.

DATED: July 20, 2011             s/Sandra S. Beckwith

```
                              Sandra S. Beckwith
                              Senior United States District Judge
```

15